IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

| | |
|---|---|
| MILDRED C. TYLER, | * |
| | * |
| Plaintiff, | * |
| | * |
| vs. | *  No. 5:04CV00356 SWW |
| | * |
| ARKANSAS DEPARTMENT OF | * |
| CORRECTION, | * |
| | * |
| Defendant. | * |

**MEMORANDUM OPINION AND ORDER**

Mildred C. Tyler ("Tyler") brings this suit against the Arkansas Department of Correction ("ADC") alleging employment discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101 *et seq*. Now before the Court is defendant's motion for summary judgment, plaintiff's response, and defendant's reply. After careful consideration, and for the reasons stated below, the Court determines that the motion for summary judgment should be granted.

**Background**

Plaintiff Tyler was employed by the ADC as a correctional transport sergeant. Correctional sergeants were expected to perform a number of duties, including supervising inmates in field work, monitoring inmates from horseback, preventing inmate escapes, checking building security, transporting inmates to job sites throughout Arkansas, and observing inmate visitation. *See* Def's. Statement of Undisputed Material Fact, Ex. B. The essential job functions of a correctional sergeant include: standing for prolonged periods, walking for prolonged periods, sitting for prolonged

periods, ascending and descending stairs, subduing inmates, restraining inmates in handcuffs or other restraints, running, and carrying injured inmates on backboards or stretchers. *Id.*, Ex. C.

On March 25, 2002, while working at the ADC, Tyler injured her leg. She filed for and received compensation for her injury through the State workers' compensation system. Plaintiff Tyler began treatment with Dr. James Bryan for her knee and ankle pain. *Id.*, Ex. D. On February 20, 2003, Bryan completed a Work Status Form indicating that Tyler could not stand for prolonged periods, but that her temporary injury would improve such that she could work light duty by February 24, 2003. *Id.*, Ex. E. Dr. Bryan completed similar forms on March 21, March 31, April 10, and June 9, 2003, indicating that Tyler could not stand for prolonged periods, but that her temporary injury would improve. *Id.*

On March 12, 2003, ADC Human Resources Manager Kenny Wiscaver mailed Tyler an application for Family and Medical Leave Act ("FMLA") leave and Essential Job Function Questionnaire to be completed by her physician. *Id.*, Ex. F. On March 14, 2003, Tyler submitted a request for leave time under FMLA beginning on February 25, 2003. *Id.*, Ex. G. On March 17, 2003, Bryan filled out an Essential Job Function Questionnaire for Tyler, stating she could not perform essential functions of her job and that her injuries were temporary. *Id.*, Ex. H. On the same day, Dr. Timothy Simon completed an Essential Job Function Questionnaire for Tyler also stating she could not perform essential functions of her job and that her injuries were temporary. *Id.*, Ex. I. On or about March 24, 2003, Tyler submitted a Certificate of Health Care Provider in support of her request for FMLA leave time. *Id.*, Ex. J. Dr. Bryan wrote on Tyler's certificate that she would not be able to perform her job functions for approximately four weeks. *Id.* Dr. Bryan wrote that

Tyler was unable to kneel, squat, or climb a ladder, and that she needed to be absent from work for treatment of her injuries. He also stated Tyler could perform work that did not require kneeling, squatting, and ladder climbing. *Id.*

On April 3, 2003, ADC Assistant Human Resources Administrator Nedenia L. Blair wrote Tyler a letter approving her request for FMLA leave beginning February 25, 2003 and ending on May 19, 2003. *Id.*, Ex. K. On April 28, 2003, Bryan completed an Essential Job Function Questionnaire for Tyler indicating her injuries were temporary and that she could not perform essential job functions. In particular, the April 28 questionnaire indicated Tyler could not stand for more than thirty minutes at a time; could not stand more than four hours total per shift; could not assist in subduing inmates and placing them in handcuffs and restraints; and could not assist in carrying an injured inmate on a backboard or stretcher. In a separate letter, Bryan wrote that if Tyler were required to perform certain job functions, she, her co-workers, and inmates would be at risk. *Id.*, Ex. L.

On May 20, 2003, Tyler was granted a two-week extension of her FMLA leave. Dr. Bryan re-evaluated her on June 9, 2003. He completed another Essential Job Function Questionnaire, indicating she could not perform essential job functions. *Id.*, Ex. C. On June 14, 2003, the ADC terminated Tyler because her FMLA leave had expired and she could not perform essential functions of her job because of her temporary injury. *Id.*, Ex. M.

Plaintiff Tyler filed a grievance on June 20, 2003, challenging her termination. She stated in her grievance that she believed she should have been placed on light duty or some temporary job until she recovered from her injury. *Id.*, Ex. N. At a hearing on July 23, 2003, Tyler testified that

a Dr. Wallace had released her to return to work within two weeks of her initial injury, *id.*, Ex. at 3, and that Dr. Bryan never told her she could not work. *Id.* at 4. She never told her superiors that her injury was permanent, and she consistently told her supervisors that she would be released back to work. *Id.* at 9. The Grievance Hearing Panel recommended that Tyler's termination be upheld. *Id.*, Ex. A.

On July 24, 2003, Tyler filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on disability.[1] On August 5, 2003, ADC Director Larry Norris reversed Tyler's termination until her leave time was exhausted. Director Norris wrote Tyler that if she were unable to perform the essential job functions on her return date, she would remain terminated until such time as she could perform those job functions, at which time she would be rehired, assuming she met all other employment qualifications. *Id.*, Ex. Q. On August 11, 2003, Tyler wrote Norris and forwarded a note dated August 4, 2003, from the South Arkansas Orthopaedic Center, stating Tyler had had surgery on July 28, 2003, and would begin physical therapy. She was scheduled for a follow-up visit in three weeks, and a decision on return-to-work status would be made at that time. *Id.*, Ex. R.

---

[1]In a previous Order, the Court dismissed plaintiff's claims of race and gender discrimination. *See* docket entry 8, dated December 3, 2004. Plaintiff failed to respond to defendant's motion to dismiss those claims but now, in her Statement of Indisputable Material Facts, argues that it was the EEOC employee who determined "whatever boxes were checked on the plaintiff's initial EEOC charge form." *See* docket entry 34 at ¶ 16. "Exhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts." *Williams v. Little Rock Mun. Water Works,* 21 F.3d 218, 222 (8th Cir. 1994). The Court will not consider the dismissed race and gender discrimination claims.

According to the ADC, Tyler has not applied for work with the ADC since her termination. She received her Dismissal and Notice of Rights from the EEOC on July 19, 2004, and filed a federal lawsuit on October 1, 2004.

**Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The non-moving party may not rest on mere allegations or denials of her pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed.R.Civ.P. 56(e)).

"[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita,* 475 U.S. at 587 (citations omitted). Summary judgment should be cautiously granted in discrimination cases because such cases often

depend on inferences rather than on direct evidence. *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir. 1994). Further, summary judgment is particularly appropriate where an unresolved issue is primarily legal, rather than factual. *Mansker v. TMG Life Ins. Co.,* 54 F.3d 1322, 1326 (8th Cir. 1995).

## Discussion

Defendant asserts the Eleventh Amendment bars plaintiff's lawsuit. Plaintiff argues defendant's immunity extends only to monetary damages. Defendant further argues plaintiff has failed to establish a claim of disability discrimination.

**A.     Sovereign Immunity**

Title I of the ADA enables qualified individuals with disabilities to bring suit for claims of employment discrimination. 42 U.S.C. § 12112(a). State governments, however, are not subject to private damages actions in federal court for violations of Title I of the ADA, 42 U.S.C. § 12112(a). *See Bd. of Trustees of Univ. of Alabama v. Garrett,* 531 U.S. 356, 370-372 (2001). In *Garrett,* the United States Supreme Court held that Congress did not validly abrogate the states' Eleventh Amendment immunity from suits for money damages under Title I of the ADA. Thus, to the extent that Tyler seeks monetary damages with respect to her claim under Title I of the ADA, the motion for summary judgment is granted and her claim is dismissed.[2]

---

[2]To the extent that plaintiff now seeks to proceed under *Ex parte Young,* 209 U.S. 123 (1908), the Court finds such claim should be dismissed. Plaintiff asserted no such cause of action in her complaint, nor did she name any state official as a defendant.

**B.     Discrimination Under the ADA**

The ADA prohibits a covered entity from discriminating "against a qualified individual because of the disability of such individual." 42 U.S.C. § 12112(a). The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Id.* § 12102(2). Plaintiff asserts that because her ability to stand and walk are substantially limited,[3] she is qualified as disabled, her injury is permanent, and that the ADC discharged her because of her disability in violation of the ADA.

In the absence of direct evidence, the Court applies the *McDonnell Douglas* analysis to disability discrimination claims. *Price v. S-B Power Tool,* 75 F.3d 362, 364 (8th Cir. 1996). This method requires a plaintiff to establish a prima facie case. The absence of an explanation from the employer creates a rebuttable presumption of discrimination. The burden of production then shifts to the employer to come forward with a legitimate, nondiscriminatory reason for its actions. *Id.* at 365. Once the employer meets its burden, the plaintiff must show that the articulated reason is an illegal pretext. *Id.*

To make a prima facie showing of disability discrimination, a plaintiff must show that she has a disability as defined by the ADA, that she was qualified to perform the essential functions of her position, and that she suffered an adverse employment action under circumstances that give rise to an inference of discrimination. *Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1135 (8th Cir. 1999). "An inference of discrimination may be raised by evidence that plaintiff was replaced by or treated

---

[3]"Major life activities" include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

less favorably that similarly situated employees who are not in the plaintiff's protected class." *Price*, 75 F.3d at 365.

Here, Tyler cannot establish a prima facie case because she cannot show she can perform her job as a correctional transport sergeant. The job requires that an applicant supervise inmates in field work, oversee inmate movement and status, check building security, assist in shakedown of prison cells and inmates, investigate inmate incidents, and prevent escapes. These tasks require sergeants to stand for long periods, be able to run, carry inmates, or subdue an unruly or fleeing inmate. Plaintiff Tyler's Essential Job Function Questionnaires demonstrate that she was unable to perform these functions while she was injured.

In her response, Tyler argues was able to perform the essential functions of her job at all times. She states she returned to work within two weeks of her injury and would have returned to work permanently if her employer had provided her with light duty. She complains that the defendant disregarded her long and exemplary work history and claims she "retained the physical and mental ability, training and experience, to perform the essential functions of her job." She argues it was only non-essential functions of her job that she could not perform.

As evidence that her discharge occurred under circumstances evidencing discrimination, Tyler asserts in her Statement of Facts that the ADC accommodated a white, male security guard who had similar but "substantially more dysfunctional leg injuries" than she. *See* Pl's. Statement of Material Fact at ¶ 19. Plaintiff Tyler, however, offers no evidence in support of this allegation. Further, Tyler now claims her injuries are permanent and thus she is disabled. There is no evidence, however, that at the time she was terminated she suffered from a disability under the ADA.

Plaintiff Tyler took her leave and FMLA time. She was unable to recover from her injury within that time. There is no requirement that an employer hold open a position for an employee on FMLA leave beyond the twelve-week period. 29 U.S.C. § 2612. She was offered re-employment when and if her injury healed to the point that she could perform the essential functions of her job. Plaintiff Tyler responded that she could not do so. She has presented no evidence that she was able to perform the essential functions of her job or that the ADC's decision to terminate her was based on anything other than her inability to perform her job.

## Conclusion

IT IS THEREFORE ORDERED that defendant's motion for summary judgment [docket entry 22] is hereby granted. Judgment will be entered for defendant..

DATED this 16th day of November 2005.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE